OPINION OF THE COURT
Titone, J.
An insurer has no right of subrogation against its own insured for a claim arising from the very risk for which the insured was covered. This rule applies even where the insured has expressly agreed to indemnify the party from whom the insurer’s rights are derived and has procured separate insurance covering the same risk. Inasmuch as the cross claim for indemnification in this case sought relief inconsistent with these principles, the Appellate Division was correct in affirming its dismissal.
Defendant Austin Powder Company rented a truck from defendant Bison Ford Truck Sales under a rental contract in which Bison Ford agreed to obtain primary insurance coverage in certain stated amounts and Austin Powder agreed to indemnify Bison Ford for liability arising out of Austin Powder’s use of the vehicle. Bison Ford had insured the vehicle with both a Basic Automobile Policy and a Comprehensive Automobile Liability excess policy issued by Liberty Mutual Insurance Company. Austin Powder, in turn, had a policy providing excess coverage for nonowned business vehicles and a second Comprehensive General Liability Policy covering contractual liability, both issued by Aetna Insurance Company.
On April 23, 1979, the truck, which was being used by Austin Powder to transport dynamite and blasting caps, exploded while it was parked outside of the Lancaster quarry. It is alleged that the accident occurred because defendant Leonard Rinker, Austin Powder’s employee, overloaded the truck, causing the wheels and wheel wells to overheat from friction. The explosion caused approximately one million dollars in property damage.
In a prior declaratory judgment action, the Appellate Division held that defendants Austin Powder and Rinker were *469 "additional insureds” under the Basic Automobile Policy issued by Liberty Mutual. The court further found that policy applicable to the losses sustained as a result of the explosion (Aetna Cas. & Sur. Co. v Liberty Mut. Ins. Co., 91 AD2d 317). Although it adjudicated the priority of the various automobile insurance policies,[1] the Appellate Division declined to address Bison Ford’s or Liberty Mutual’s right to recover from Austin Powder under the indemnification provisions in the rental contract. Inasmuch as none of the underlying claims had yet been resolved and neither the fact nor extent of Bison Ford’s loss had been determined, the court concluded that a declaratory judgment on the indemnification issue would be premature. Neither of the parties sought to appeal from the court’s order.
Subsequently, Pennsylvania General Insurance Co., suing as subrogee for Anthony Krupa, brought an action against Austin Powder, Rinker and Bison Ford, among others, to recover for the damage to Krupa’s automobile that had been sustained as a result of the explosion. Liberty Mutual paid $2,252.35 in settlement of that property damage claim, obtaining a release only on behalf of Bison Ford. With the fact of an actual loss thereby established, Bison Ford then interposed a cross claim for indemnification against Austin Powder.
The indemnification claim was upheld by Special Term, but the Appellate Division reversed and dismissed the cross claim in its entirety. The court first attempted to harmonize the insurance and indemnification clauses in the rental contract by reasoning that Bison Ford’s obligation was to provide primary coverage, while Austin Powder had undertaken only to indemnify for excess loss (115 AD2d 243, 245). The court noted that this analysis was consistent with its ranking of the insurance policies’ priorities in the prior declaratory judgment action, as well as with the rule precluding an insurer from being subrogated to a claim against its own insured for the very liability the insured’s policy covers. Recognizing that Austin Powder had an unranked insurance policy covering contractual liability, the court nonetheless declined to comment on "the possible involvement” of that policy, since the $2,252 claim before it fell far short of the limits of the primary coverage. Following the Appellate Division’s ruling, *470 Bison Ford appealed from the order of reversal, and Austin Powder, along with its employee Leonard Rinker, appealed from so much of the Appellate Division’s decision as determined Austin Powder’s obligation to indemnify for excess loss.
We agree with the Appellate Division to the extent that court determined that the indemnification claim should be dismissed. Our analysis, however, differs somewhat from that used by the Appellate Division, which looked primarily to the parties’ rental agreement as a basis of allocating liability. Because the public policies governing insurers’ subrogation rights are implicated in this case, it is those overriding policies, rather than the parties’ agreement, that must guide our analysis.
Initially, we note that Bison Ford has no indemnification claim in its own right against Austin Powder. As its motion papers acknowledge, Bison Ford has not and will not sustain any actual out-of-pocket loss as a result of the property damage claim asserted in this action, since the action has been settled and payment has been made on its behalf by its insurer, Liberty Mutual.[2] Thus, to the extent Bison Ford is seeking indemnification, its cross claim must be regarded as one asserted on behalf of the insurer, the real party in interest here.[3] Viewed in that light, the cross claim cannot be sustained because it represents, in effect, an attempt by an insurer to recover from its other insured, Austin Powder, for *471 the very loss for which Austin Powder was supposed to be covered. Such an unseemly result would not be consistent with the equitable principles that govern subrogation claims.
The insurer’s right of subrogation, long recognized as a matter of equity, has traditionally been applied to claims against third parties whose wrongdoing has caused a loss for which the insurer is bound to reimburse (see, e.g., Ocean Acc. & Guar. Corp. v Hooker Electrochemical Co., 240 NY 37, 47; 16 Couch, Cyclopedia of Insurance Law § 61:133, at 310 [Anderson 2d ed]; see also, Wager v Providence Ins. Co., 150 US 99; Home Ins. Co. v Pinski Bros., 160 Mont 219, 500 P2d 945, 949). A third party, by definition, is one to whom the insurer owes no duty under the insurance policy through which its loss was incurred (16 Couch, op. cit., at 310; see, Home Ins. Co. v Pinski Bros., supra, p 949). On the other hand, it has often been said that an insurer may not be subrogated to a claim against its own insured, at least when the claim arises from an incident for which the insurer’s policy covers that insured (see, e.g., Chrysler Leasing Corp. v Public Administrator, 85 AD2d 410; Beck v Renahan, 26 AD2d 990, affg 46 Misc 2d 252; 16 Couch, op. cit. §§ 61:133, 61:134; see also, Hartford Acc. & Indem. Co. v Michigan Mut. Ins. Co., 61 NY2d 569). The principal, although alluded to in our prior decisions (Hartford Acc. & Indem. Co. v Michigan Mut. Ins. Co., supra, p 573), has never been formally addressed by this court. Having considered the relevant authorities, we now conclude that the rule is a sound one. To allow the insurer’s subrogation right to extend beyond third parties and to reach its own insured would permit an insurer, in effect, "to pass the incidence of the loss * * * from itself to its own insured and thus avoid the coverage which its insured purchased” (Home Ins. Co. v Pinski Bros., 160 Mont 219, 226, 500 P2d 945, 949, supra).
Bison Ford does not dispute this premise, but rather argues that it is inapplicable here because, although Austin Powder is an "additional insured” under Liberty Mutual’s Basic Automobile Policy, it was Bison Ford, rather than Austin Powder, that paid for the coverage. This argument, however, is unrealistic in that it overlooks the very likely possibility that Bison Ford’s insurance costs were passed along to Austin Powder in the form of an increased vehicle rental price. More importantly, the argument is unpersuasive because it ignores one of the primary considerations militating against allowing subrogation in these circumstances.
*472 The rule against allowing subrogation claims against an insured is based, in part, on the potential for conflict of interest that is inherent in these situations (see, e.g., Chrysler Leasing Corp. v Public Administrator, supra; Home Ins. Co. v Pinski Bros., supra, p 949). Here, for example, the interests of the insured indemnitor, Austin Powder, can only be fully protected through the vigorous defense of the indemnitee, Bison Ford. Yet, if indemnification from Austin Powder could be had for losses sustained on Bison Ford’s behalf, Liberty Mutual would have less incentive to defend Bison Ford from claims made against it. As a consequence, allowing indemnification might sanction an indirect breach of the insured’s obligation to defend its insured Austin Powder. Furthermore, it would sanction a direct breach of the primary obligation the insurer undertook — the obligation to indemnify Austin Powder from loss (see, Home Ins. Co. v Pinski Bros., supra, p 949).
Since allowing Liberty Mutual to claim indemnification here would, directly or indirectly, place the insurer’s own interests at variance with those of its insured, we are not persuaded by Bison Ford’s argument that an exception to the rule should be created, because of the mere fortuity that Austin Powder had separate insurance covering the same loss and had expressly agreed to indemnify. Indeed, the public interest in assuring integrity of insurers’ relations with their insureds and in averting even the potential for conflict of interest in these situations must take precedence over the parties’ private contractual arrangements.[4]
Having determined that the cross claim against Austin Powder and Rinker was properly dismissed by the Appellate Division,[5] it remains for us to dispose of the appeals purportedly taken by those defendants. In that regard, we note that dismissal is required because Austin Powder and Rinker were not aggrieved by the Appellate Division order, which gave them all the relief they sought on this motion (see, CPLR 5511). That the Appellate Division’s memorandum may contain language or reasoning which those parties deem adverse to their interests does not furnish them with a basis for *473 standing to take an appeal (Cohen and Karger, Powers of the New York Court of Appeals § 91, at 394-395 [rev ed]).
We further note, however, that, as the Appellate Division duly observed, the claim that court had before it in this appeal did not exceed the limits of Austin Powder’s primary coverage under the Liberty Mutual Basic Automobile Policy. Accordingly, to the extent that the court discussed Austin Powder’s potential obligation to provide indemnification for losses in excess of the primary coverage, its conclusion is not binding in subsequent proceedings.
Furthermore, in the present posture of this case, it is unclear whether Austin Powder may be deemed an "additional insured” under the Comprehensive Automobile Liability excess policy issued to Bison Ford by Liberty Mutual. Since, under our analysis, Liberty Mutual’s right to be subrogated to an indemnification claim against Austin Powder for loss in excess of its basic coverage would be affected by the resolution of that question, any attempt to delineate the full scope of Liberty Mutual’s subrogation rights within the context of the present motion would be premature.
Accordingly, on the appeal taken by defendant Bison Ford Truck Sales, the order of the Appellate Division should be affirmed, with costs. The appeals taken by defendants Austin Powder Company and Leonard Rinker should be dismissed, without costs, on the ground that those parties are not aggrieved by the Appellate Division order (CPLR 5511).
Chief Judge Wachtler and Judges Meyer, Kaye and Alexander concur; Judges Simons and Hancock, Jr., taking no part.
On appeal by defendant Bison Ford Truck Sales, order affirmed, with costs.
Appeal by defendants Austin Powder Co. and Leonard Rinker, dismissed, without costs.

. The Appellate Division did not include Austin Powder’s Comprehensive General Liability Policy with Aetna in its analysis of the insurers’ obligations.

. It is elementary that, absent a clear contractual expression to the contrary, a cause of action for indemnification does not arise until the indemnitee has actually sustained a loss (see, Bay Ridge Air Rights v State of New York, 44 NY2d 49). Of course, a party who has not yet been cast in damages or sustained actual loss may assert an anticipatory claim for common-law or contractual indemnification (see, McDermott v City of New York, 50 NY2d 211, 218, n 3). Here, however, the averments in Bison Ford’s own motion papers negate even the possibility that it will suffer loss as a result of this action.

. CPLR 1004 allows an insurer’s subrogation claim to be prosecuted in the name of the insured, where the insured has "executed to his insurer either a loan or subrogation receipt, trust agreement, or other similar agreement”. The insurance policy issued to Bison Ford by Liberty Mutual expressly provides that the insured on whose behalf a payment is made "must transfer” any rights of recovery it might have to the insurer. It is unclear from the present record, however, whether an appropriate instrument has in fact, been executed. It is therefore impossible for us to determine whether Bison Ford is pursuing the indemnification claim on its own behalf or on behalf of its insurer, under CPLR 1004. However, our resolution of the substantive question here, makes such a determination unnecessary.

. We note that we do not necessarily adopt the Appellate Division’s view that Austin Powder’s promise in the rental agreement to indemnify was limited to reimbursement for excess loss.

. It is undisputed that as an employee of Austin Powder, Rinker was also an "additional” insured under Liberty Mutual’s Basic Automobile Policy. Hence, our reasoning is equally applicable to the cross claim asserted against him.